UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

DARRYL IRONS,

    Plaintiff,

v.

LT. S. GOLDMAN,
CAPT. W. BENNETT,
OFFICER C. SHIELDS,
MAJOR W. MOTT,
WARDEN L. ARMSTEAD,
P. JUKNELIS, *Hearing Officer of Record*, and
C. SESSIONS, *Headquarters Coordinator*,

    Defendants.

Civil Action No. TDC-16-0678

## MEMORANDUM OPINION

Plaintiff Darryl Irons, currently confined at Patuxent Institution, has filed this civil rights complaint pursuant to 42 U.S.C. § 1983 alleging that Lieutenant S. Goldman, Captain W. Bennett, Officer C. Shields, Major W. Mott, Warden L. Armstead, Hearing Officer P. Juknelis, and Headquarters Coordinator C. Sessions (collectively, "Defendants") denied him due process through, and subjected him to cruel and unusual punishment as a result of, prison disciplinary proceedings. Pending before the Court is Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Having reviewed the submitted materials, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6 (2016). For the reasons set forth below, Defendants' Motion, construed as a motion for summary judgment, is GRANTED.

## BACKGROUND

The salient facts of this case are not in dispute. On April 19, 2015, Irons was instructed by a correctional officer to report immediately to the prison medical facility to provide a urine sample for a random drug test. He promptly complied. On April 27, 2015, Irons was issued a Notice of Inmate Rule Violation ("Violation") charging him with violating Rule 115, which prohibits inmates from, as relevant here, providing a diluted urine sample. Department of Corrections ("DOC") policy defines a diluted urine sample as one with a creatine level of 20 milligrams per deciliter or less. The Violation, signed by Defendant Goldman, stated that Irons's creatine level was 19 milligrams per deciliter, that Irons had no medical conditions or prescribed medications that would explain his creatine level, and that, in accordance with DOC policy, he was being charged with deliberately consuming excessive amounts of water in order to avoid detection of drug use. The Violation was reviewed by Defendant Bennett, who ordered a hearing and recommended that Irons be placed in administrative segregation pending that hearing. Defendant Mott then approved the administrative segregation recommendation. Irons was thus placed into administrative segregation that same day. Irons received written notice of the alleged infractions.

At a May 13, 2015 hearing, presided over by Defendant Juknelis, Irons pleaded not guilty to violating Rule 115. Irons testified, and provided medical records to substantiate, that he had been prescribed the medication Amitriptyline, which can cause dry mouth and dehydration, with the latter symptom potentially causing liver damage. Irons asserted that he drank increased amounts of water to alleviate these side effects. Hearing Officer Juknelis did not admit Irons's medical records into evidence, and no other witnesses testified. Hearing Officer Juknelis credited the written Violation and found Irons guilty of violating Rule 115. As to Irons's

2

proffered defense, Hearing Officer Juknelis asserted that the amount of water Irons would have had to drink to drop his creatine levels below 20 milligrams per deciliter was "far beyond what ANY normal person would drink to quench their thirst or to take medications." Compl. Ex. 1 at 6 (Inmate Hearing Record), ECF No. 1-1. He further noted that there were many other inmates in the prison who were prescribed Amitriptyline who had not been charged with urine dilution. As punishment for the violation, Hearing Officer Juknelis revoked 60 days of Irons's good-conduct credits, imposed a 10-day segregation period, and suspended Irons's visitation privileges for 180 days. As a result of the finding of guilt, Irons lost his institutional job assignment as an Observation Aide.

Irons timely appealed the decision to Warden Armstead, arguing that the medical records established his innocence because they demonstrated that dehydration is a side effect of his prescribed medication, and that as a result of that side effect, he was required regularly to consume fluids. As a remedy, Irons asked for restoration of his good-conduct credits, visitation privileges, and position as an Observation Aide; an award of $100 per day from April 27, 2015 forward as damages; and the suspension of all of the officers involved in the disciplinary proceedings. Warden Armstead denied the appeal, noting that the information about Irons's prescription had been taken into consideration by Hearing Officer Juknelis.

Irons then appealed the Warden's determination to the Inmate Grievance Office ("IGO"), and the matter was referred to an Administrative Law Judge ("ALJ") for a hearing. Irons requested permission to call Lt. Goldman, Major Mott, Hearing Officer Juknelis, and Warden Armstead as witnesses at the hearing. The request was denied on the basis that Irons had called no witnesses at the original hearing, and that none of the proposed witnesses could testify to the underlying alleged infraction. Irons also asked to be allowed to present his medical records, his

psychiatric evaluation, and the Patuxent Institution Directive on urinalysis testing. Irons was allowed to introduce his medical records, but not his psychiatric record or the prison's urinalysis testing policy, which were deemed not relevant.

In a December 29, 2015 decision, the ALJ overturned the decision issued by Hearing Officer Juknelis and affirmed by Warden Armstead, finding that the decision was not supported by substantial evidence and was clearly erroneous. *See* Md. Code Regs. 12.07.01.08B(1)(a) (2012) (providing that a Hearing Officer's decision should be affirmed if the ALJ determines that it is supported by substantial evidence). The ALJ concluded that Hearing Officer Juknelis improperly refused to admit Irons's medical records into evidence, and that he cited insufficient evidence for his assertions that other inmates taking the same medication had not been found in violation of Rule 115 and that Irons's urine was diluted beyond that of any normal person. Lastly, the ALJ noted that Irons had no advance notice of the urine test, making it improbable that he could have increased his fluid intake in order to alter the test results.

The ALJ thus proposed reversal of the Hearing Officer's decision and expungement of the violation from Irons's record, but he recommended against any of the additional relief requested from the Warden. The Secretary of the Department of Public Safety and Correctional Services affirmed the ALJ's proposed decision on January 19, 2016. Irons's violation was accordingly expunged and his good-conduct credits restored. By the time of the ALJ hearing, however, Irons had already served his term of administrative segregation and completed the six-month period without visitation privileges.

On February 23, 2016, Irons filed a Request for Administrative Remedy under the Administrative Remedy Procedure ("ARP") seeking the additional relief he requested in his appeal to the Warden, specifically, reinstatement to his Observation Aide position, damages of

$100 per day since the violation finding, and the suspension of the officers involved. He also sought additional relief in the form of good-conduct credits he would have earned during the period that the violation was on his record, back pay for the time he was not employed as an Observation Aide, an additional $100 per day for the 16 days he spent in administrative segregation, and a letter of apology. Defendant Shields denied the ARP on the ground that inmates cannot seek relief from disciplinary proceedings through the ARP process. After Irons appealed the denial, Defendant Sessions denied his appeal on March 10, 2016 on the same basis. That same day, Irons was reinstated to his position as an Observation Aide. On March 27, 2016, Irons appealed the matter to the IGO, which administratively dismissed his appeal because it repeated the claims Irons had asserted in the prior ALJ proceeding.

Meanwhile, on March 7, 2016, Irons filed his Complaint in this Court in which he asserts that Defendants violated his rights under the Eighth Amendment to the United States Constitution by subjecting him to cruel and unusual punishment in the form of deliberate indifference throughout this process, and his right to due process of law under the Fourteenth Amendment. He seeks a declaratory judgment that his constitutional rights were violated, a preliminary and permanent injunction ordering Defendants to adhere to all relevant DOC policies, compensatory and punitive damages, suspension of each Defendant for five days, an apology, and an exoneration letter. Irons has attached to his Complaint: (1) the Notice of Inmate Rule Violation, (2) the Inmate Hearing Record, (3) his medical records, (4) his appeal to and the response from Warden Armstead, (5) his appeal to the IGO, and (6) the ALJ opinion. In response to Irons's Complaint, Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment to which they attached exhibits that largely duplicate Irons's exhibits. Defendants also include Irons's ARP and IGO appeal filed after the ALJ decision.

## DISCUSSION

Defendants move to dismiss the Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56, on the grounds that: (1) Irons's claims are moot because his Violation was reversed and his good-time credits restored by the ALJ; (2) Irons fails to state a claim on which relief can be granted because he has no constitutionally protected liberty interest on which to base his claim; (3) Defendants are immune to suit under the Eleventh Amendment to the United States Constitution; (4) Defendants have qualified immunity; and (5) Irons fails to plead sufficient facts of Defendants' personal involvement in any alleged wrongdoing. As discussed below, the Court grants summary judgment on the grounds that the undisputed evidence establishes that Irons's constitutional rights were not violated because the ALJ decision reversed the alleged violations and, to the extent that he has claims left unaddressed by that decision, those claims do not implicate any constitutionally protected liberty interest. The Court need not, and thus does not, address Defendants' remaining arguments.

### I. Legal Standards

In order to consider the exhibits submitted by Defendants in support of their Motion, the Court must construe the Motion as seeking summary judgment. Fed. R. Civ. P. 12(d). Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012). Here, however, no discovery appears necessary. The parties have each submitted to the Court—as exhibits attached to Irons's Complaint and as attachments to Defendants' Motion—substantially identical records. In his Opposition to Defendants' Motion, Irons neither objects to consideration of Defendants' Motion as a motion for summary judgment

nor asserts that there are disputed issues of fact. Instead, he urges this Court to grant summary judgment in his favor. Under these circumstances, where the record appears to be undisputed and complete, it is appropriate to consider the Motion as a motion for summary judgment.

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II. Eighth Amendment

Irons asserts that throughout the disciplinary hearing process, Defendants acted with "deliberate indifference" to his claims and thus subjected him to cruel and unusual punishment in violation of the Eighth Amendment. Such a claim cannot succeed. The Eighth Amendment was designed "to proscribe torture and other barbarous methods of punishment." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). The United States Supreme Court has held that prison officials can violate the Eighth Amendment if they act with "deliberate indifference" to the safety of an

inmate, or to the serious medical needs of an inmate. *Id.* at 104. Here, Irons's allegations and the record evidence contain nothing that can plausibly be construed as cruel and unusual punishment generally, or actions or omissions that could be construed as jeopardizing Irons's safety or ignoring his medical needs. He therefore cannot succeed on his claim for relief under the Eighth Amendment.

**III. Due Process**

Irons also claims that Defendants' failure to grant him the requested relief through the disciplinary hearing process violated his right to due process of law under the Fourteenth Amendment. Defendants do not dispute the factual assertions underlying Irons's claim. Accordingly, there is no genuine dispute of material fact between the parties, only a legal dispute whether Irons has adequately established a due process claim based on the asserted facts.

First, there is no viable due process claim arising from the Hearing Officer's finding of a violation or the imposed punishment of a loss of good-conduct credits because the ALJ reversed the Hearing Officer's decision and restored those credits. Under *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974), Irons has a constitutionally protected liberty interest under the Fourteenth Amendment in maintaining earned good-conduct credits, which allow for an inmate's early release, such that his good-time credits may not be revoked without procedural due process. *See id.* at 558. Here, although Irons's good-conduct credits were revoked based on the disciplinary hearing, those credits were restored based on his appeal to the ALJ. Any infringement of Irons's due process rights based on the first disciplinary hearing was therefore cured by his successful administrative appeal, because "[t]here is no denial of due process if the error the inmate complains of is corrected in the administrative appeal process." *Morissette v. Peters*, 45 F.3d 1119, 1122 (7th Cir. 1995); *see Young v. Hoffman*, 970 F.2d 1154, 1156 (2d Cir. 1992) (holding

that the prisoner-plaintiff "was ultimately afforded his due process protections" because the administrative reversal of his disciplinary proceedings "cured any procedural defect that may have occurred"); *Harper v. Lee*, 938 F.2d 104, 105 (8th Cir. 1991) (finding no due process violation when the wrongful failure to permit a prisoner to offer log book evidence at a disciplinary hearing was reversed on appeal and corrected at a second disciplinary hearing, because the "administrative appeal process is part of the due process protection afforded prisoners"). Moreover, because Irons's constitutionally protected liberty interest extends only to maintaining good-time credits already earned, he has no viable claim for credits he might have earned during the period before his violation was expunged. *See Wolff,* 418 U.S. at 557 (stating that "the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison"); *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir. 1995) (holding that the loss of an opportunity to earn good-time credits through a prison job did not implicate a liberty interest).

Second, to the extent that Irons asserts a due process violation arising from the ALJ's failure completely to undo the Hearing Officer's punishment or grant the additional relief requested, he cannot succeed because the imposition of administrative segregation, the loss of visitation rights, and the temporary loss of his prison job do not implicate a constitutionally protected liberty interest. As to his placement in administrative segregation, the Supreme Court has held that liberty interests protected by due process generally extend only to those conditions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Sandin,* an inmate who was sentenced to 30 days of disciplinary segregation, served that time, then had the disciplinary decision overturned on appeal, filed a due process claim under 42 U.S.C. § 1983, relying on

*Wolff. Id.* at 476. The Court held that the disciplinary segregation, which did not affect the duration of the prison sentence, did not present the type of deprivation that implicates a constitutional liberty interest giving rise to due process rights. *Id.* at 486. Likewise, the United States Court of Appeals for the Fourth Circuit has held that inmates have no liberty interest in avoiding, and thus no due process claim stemming from, being placed into administrative segregation. *Beverati v. Smith*, 120 F.3d 500, 502-04 (4th Cir. 1997) (rejecting a due process claim by inmates held in administrative segregation for six months after disciplinary charges were resolved). The Court so held even though the actual conditions in segregation were markedly "more burdensome than those imposed on the general prison population," because those conditions were "not so atypical" that they "imposed a significant hardship in relation to the ordinary incidents of prison life." *Id.* at 504 (noting the inmates' claims that segregation included vermin-infested cells, human waste in cells, leaking toilets, unbearable heat, less food, reduced access to clean clothes and linens, reduced out-of-cell time, no outdoor recreation time, and no educational or religious services). Where Irons has neither claimed nor offered evidence that the conditions of his segregation went beyond those in *Sandin* and *Beverati* such that they meet this "atypical and significant hardship" standard, the Court finds no due process violation arising from Irons's time in segregation. *Sandin*, 515 U.S. at 484.

Similarly, a loss of visitation rights does not implicate a constitutionally protected liberty interest. *See Williams v. Ozmint*, 716 F.3d 801, 807–08 n.9 (4th Cir. 2013) (holding, in the context of a qualified immunity analysis, that a two-year suspension of an inmate's visitation privileges did not violate a clearly established constitutional right); *White v. Keller*, 438 F. Supp. 110, 120 (D. Md. 1977), *aff'd per curiam* 588 F.2d 913 (4th Cir. 1978) (holding that there is no

constitutional right to prison visitation privileges giving rise to procedural due process protections).

Because Irons was reinstated to his position as an Observation Aide in March 2016, any claim relating to the Hearing Officer's order removing him from the position would be limited to his temporary loss of the job between April 27, 2015 and March 10, 2016. Regardless, such a claim cannot succeed because an inmate does not have a constitutionally protected liberty interest in maintaining a specific prison job. *Bulger*, 65 F.3d at 50 (joining with the United States Courts of Appeals for the Third, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits in holding that "an inmate's expectation of keeping a specific prison job, or any job, does not implicate a protected property interest").

Even if Irons may have a legitimate claim that additional relief would be necessary to make him whole following the reversal of the Hearing Officer's violation finding, his claim before this Court is an alleged violation of his constitutional rights. Because Irons has not identified any potential due process violation arising from his disciplinary proceedings or the failure to grant his additional requested relief, he cannot succeed on his claims before this Court. Defendants' motion for summary judgment will be granted.

## CONCLUSION

For the foregoing reasons, Defendants' Motion, construed as a motion for summary judgment, is GRANTED. A separate Order shall issue.

Date: September 12, 2017

THEODORE D. CHUANG
United States District Judge